Ms. Mandelbaum, you're representing the petitioner here. Yes, Your Honor. Good. You know what might be a good idea in this case? Yes. We understand you're looking for a remand. Why don't we hear from the commissioner on this, and we'll find out why we shouldn't remand this matter. Okay. And then you can come up and tell us why we should. Absolutely. That'll give you a chance to have a final say on all these matters. Absolutely. Ms. Quinn, is that okay with you? That works. All right. Perfect. Good afternoon. Carla Quinn, Special Assistant U.S. Attorney for the Commissioner. May it please the Court. I'm here to discuss, Your Honors, why the ALJ properly found that ST's epilepsy did not meet the listings. In this case, listing 111.02A. Can I just ask one procedural question? Maybe you can just clear this up for me. It looks as if the district court remanded for a finding on the one domain that the court perceived wasn't covered adequately, and then an appeal was taken to us, and then it looks as if the ALJ then dealt with that. And I guess an appeal is pending. Is that correct? Well, Your Honor, the ALJ issued an amended decision, and ST did not appeal that decision. Do they have jurisdiction to do that? I mean, if it appeals up to us, it looks like you've got a piecemeal appeal. And then at the same time, just to add on, make it even further complicated, is that there was an award of attorney's fees. How does it work if there's an appeal to us? It's not a – I just don't have a clue. Right. Oftentimes we don't see these situations because oftentimes petitioners won't appeal remands. But in this – so that's why it's an unusual situation. The district court did remand the case, and usually that's a satisfactory result. So sometimes you see appeals of this nature to the circuit because – oftentimes it's because they want payment rather than a new hearing. But in this instance, because the district court only found a discrete error and remanded for just further clarification of that one error, we had an ALJ – a new ALJ decision dealing with that one issue, but yet an appeal to the circuit of everything else that the district court found to be – Can you split a case like that? Yes, you can. Okay. Anyway, what the court ultimately did by saying that it reversed on the attorney's fees, I guess that sort of settles that, at least made it a final order. Yes, exactly. Okay. So now we're dealing with the issues that the district court found were supported by substantial evidence, and specifically the fact that ST – her epilepsy did not rise to the level to meet listing 111-02A. And in order to meet that listing, a child must have an established diagnosis of epilepsy with the occurrence of more than one major motor seizure per month. And that means loss of consciousness and convulsive seizures. So they have to have more than one of those per month after three months of treatment. So you begin counting on the fourth month or do you begin counting on the first month? No, you begin counting on the first month. It's not to suggest that you need 15 months, but you do need to have three months of treatment. In other words, if the child had – So if you get to the fourth month and you're still getting one a month, then it's almost like a relation back. In other words, if they've had the one a month – Yeah, they're getting treatment from month one, two, and three, and then it continues on the fourth month. Fourth month doesn't become month one. There's a relation back because the medication hasn't been effective. Exactly. And you also can't have – Or hasn't been effective enough to stop the listing. Right. And it's also for the situations where if the child had 13 seizures in two months, we still want to see one more month of treatment to see what happens. So then the question here becomes why did the ALJ leave out October to March? Well, that's where we disagree, Your Honor. The ALJ in her decision clearly did consider the entire time period. She discusses the evidence dating back to October, which she didn't even have to do. The first date in which the child is eligible for benefits is January 2004. She filed an application in December 2003, and according to the SSI regulations, you're only eligible for benefits beginning the month after. So the ALJ really only needed to begin looking at January 2004, but went back to October 2003, which is when the child was first diagnosed with epilepsy, reviewed the evidence during that time period, and started essentially counting, although the distinction became this was in the initial months of treatment, the initial diagnosis period. The seizures were frequent. They were more severe. They weren't controlled to the extent they were after medication and treatment took place. Let me ask you, counsel, making the determination as to numerosity as it relates to the seizures, does that excuse the commissioner on the issue of the nocturnal seizures? Because it seems that Judge Chesler said that the court said, having made that determination, you don't need to go to the disjunctive, the second part, as to nocturnal seizures. Is that correct? That you don't – I'm sorry, the sentence in the last part. Well, clearly the ALJ didn't consider nocturnal seizures. Is that correct? She considered. In fact, where you see in her decision, she talks about ST's grandmother's – although she had some nocturnal seizures, it was very unclear how many, she didn't miss school as a result. And the key factor in assessing nocturnal seizures is the residual effect they have the next day. And as the medical expert testified at the hearing, and the ALJ relied on in her decision, because these nighttime seizures, which, again, aren't really documented by the medical evidence, but that's okay, you're not going to run to the ER every time you have a nighttime seizure, didn't affect her the next day. Now, I may or may not be understanding the appellate's argument correctly, but as I get part of it, it is that essentially there's a Burnett, if you will, violation here, that it was incumbent upon the ALJ to open the record, to receive new evidence, to take new testimony. You earlier in your argument characterized this as a new decision, but really it's sort of an add-on, isn't it? It's a couple pieces added on to the decision which incorporates the prior decision by its terms. Actually, the decision we're reviewing here is not the amended decision. The decision we're looking at right now is the original. Is the original decision, all right, fine. The new decision is not in this court's jurisdiction. All right. This is – but I can still address the Burnett. This is not a Burnett-type case. The Burnett listings analysis in Burnett was extremely sparse. The ALJ in that case didn't even discuss the impairments that they were considering, didn't discuss the numbers of the listings that they corresponded to. This is a much different analysis. This is a much more adequate analysis. The ALJ specifically discussed the impairments she was considering, the listings that they corresponded to, went into detail about why they did not meet the listings, and it permits meaningful judicial review, which is what we need to look at after Jones came out. So this is not a Burnett-type case and does not come to that level. One of the problems that I had is that the ALJ concluded that the girl and her grandmother's testimony was not credible as to the number of seizures because there wasn't corroboration. But it seems pretty clear from the regulations you don't need corroboration. Is that correct? To some extent. The ALJ found the grandmother and ST's testimony somewhat credible. That's the word she used. And to the extent that they were supported by medical documentation. Now, no, you do not need medical documentation, especially as the medical expert testified in a case. The flip to the somewhat. I thought she said where she found a credibility determination was questioned was as to the number of seizures and said that what you need here is corroboration. But it's pretty clear from the regulations you can make a finding without corroboration in this case. That this case should be. Well, our position is that you're looking at whether this child has the requisite number of, again, major motor seizures, the kinds of seizures where she lost consciousness. That's what has to happen in order to meet this threshold of listening. She had to actually lose consciousness in each one of those seizures. The evidence as documented simply doesn't show that. Even if you consider the grandmother and ST's testimony about all the seizures she had that weren't documented by medical evidence. One, they don't suggest that she lost consciousness every single time. And two, we're not suggesting. And this is to answer your question. We're not suggesting, again, that you need to go to the doctor every single time you have a seizure. Run to the emergency room. Have a report filled out. But you would think. And there are pediatrician notes. There are treating neurologist notes that happen during the time span when they're alleging that there are seizures constantly happening. We would expect, in that instance, that they would mention, oh, in the last two months my granddaughter had three seizures. My granddaughter had nighttime seizures over the course of the month. I don't remember exactly how many, but they're happening. That is not mentioned in the treating physician's notes. In July 2004, when this is supposed in the time frame we're looking at, she is described as a well child by her pediatrician. No mention of it. In July 2005, again, described as a well child. No mention of these constant seizures that are alleged. So while we're not saying that it needs to be corroborated by specific documented evidence, we are allowed to look at the whole picture, which is why there are credibility findings. I mean, if we were to adopt everything a claimant said, we would have no such thing as a credibility finding. But why the statement that she needed corroboration when she doesn't? The regs do not say that you do not need medical. I guess what the reg says is a claimant's statements about intensity and persistence of symptoms may not be rejected, quote, solely because available objective medical evidence does not substantiate the statements. Right. That's in Section 416. And the ALJ here did not reject solely because ST and her grandmother's testimony wasn't documented. He also looked at the fact that her treating doctors and the state agency doctor and the medical expert and the consultative physician all said that this child had a reduced number of seizures following treatment, following medication, that they were of decreased frequency, decreased severity. They were petite mal. They were not major motor seizures. They were the kind of seizures where you perhaps have a you stare into space or have a glazed look or become listless or that kind of thing. No loss of consciousness more than one time per month for a course of a year. And the ALJ relied on that. So while he didn't solely reject the testimony because he didn't solely reject it because it wasn't corroborated by testimony. She considered it in relation to the entire medical record and is permitted to do so in that case. Anything else you want to tell us? Just that the ALJ, as I said, the ALJ properly found that ST's epilepsy did not rise to the level. The record does not show that she had more than one major motor seizure per month. The treating physician, the treating pediatrician described her seizures as petite mal, not the major motor seizures. The treating neurologist described them as petite mal after treatment had initiated. The medical expert at the hearing testified that they did not rise to the level of listing level seizures. The state agency physician found that they were not listing level. The state agency physician who reviewed. Did the ALJ isolate the number of seizures per month dating back to the alleged onset date? They're saying the alleged onset date was October. You're saying, what, it's January 1st? No, the alleged onset date is October 1st. The first month they're entitled to benefits is January 1st. Did the ALJ isolate the number per month? I don't think she specifically went through and said in October there were this many. She described all of these. Actually, I think technically it has, doesn't technically have to be more than one per month? More than one per month. So it's probably, in effect, two per month. Well, I don't think you, I think you can, I don't think you have to have two each calendar month. Okay, so but I didn't see any isolation of. No, she didn't, like I said, she didn't go through and specifically. She does go for that period March 04 to January 05. She counts 11 seizures. She doesn't specifically count that way, the ones from October to March, October 03 to March 04. However, she discusses all of the alleged seizures, discusses the medical testimony, which the school nurse's notes when she said ST had two seizures on November 17th. So she goes through and discusses each piece, but she doesn't come up with a numerical quantification the way she did for that other time. Shouldn't she have done so? Well, she didn't need to. There wasn't, there was no indication that this was, she didn't, the seizures did not rise to the level of major motor. There was no loss of consciousness. In effect, she wasn't going to meet the listing even if she had more than one per month. Well, with a nocturnal she could have because she missed a lot of school days, in fact, to the point where she was homeschooled for three months. She didn't miss school because she was homeschooled. The reason she was homeschooled was to work on an adjustment to medication and have further blood tests. And at the hearing they testified that ST and her grandmother both testified that she hadn't missed significant days of school. Which gets to my earlier question. Is the nocturnal explanation that was rendered or not rendered, as the case may be, is it sufficient? Yes, Your Honor. Why? Because the ALJ specifically discussed the key factor of that portion of the listings. The key factor in order to meet the listing for nocturnal seizures is that the residuals of the nighttime seizures affect your activities the next day. The medical expert at the hearings testified that they did not, that ST seizures did not. The ALJ relied on that testimony and also discussed ST and her grandmother's testimony that she did not meet, she did not, excuse me, miss school because of nighttime seizures. That was a sufficient discussion, Your Honor. I see that I'm out of time. Thank you very much, Ms. Clinton. Ms. Mandelbaum. May it please the Court. Randy Mandelbaum on behalf of ST. I'm from the Rutgers Child Advocacy Center. Since 2003, ST has been suffering from epilepsy. Specifically, the agreed upon onset date is October 2003. Her application date was December 2003. And at the heart of our concerns is the ALJ's failure to properly analyze this record and provide sufficient reasoning, as well as some serious legal deficiencies in the limited reasoning that there was. I think there's overwhelming evidence in the record that this could be a straight reversal, but given the difficulties that I know the reviewing courts have, part of the question to remand. Part of the problem that we have is that it looks as if, just take the five-month period from October to March, that there wasn't much testimony from the grandmother or ST as to how many major seizures she had or how many nocturnal seizures she had that affected her activities the following day. Well, Your Honors, there was lots of evidence in the record for those first five months. That's the concern when you're talking about a listing where you actually have to do some counting. When you start that count is really critical. And there was evidence in the school records that she was having seizures on November 11th, November 13th, two seizures in one day, November 17th. Can they be petit mal or do they have to be grand mal? These were seizures where she was convulsing and falling and losing consciousness. These were not petit mal. The first instance that you hear about petit mal seizures from her treating neurologist is not until January 2005. It is only then that she talks about her having both petit mal and grand mal seizures. Up until that point, there is nothing from her treating doctors talking about petit mal seizures. If this went back on remand, what would you put before the court that wasn't there previously? Well, I think for starters it's critical that the count start at the proper time. A read of the ALJ's decision clearly shows that that count did not start until March. Her seizure disorder was so serious from October to March that she couldn't be in school anymore. The doctors put her on bed rest basically in the months of December 2003, January 2004, and February 2005. Was there some indication that at one point she was not taking her medication properly? There's some notations in the record where her blood levels were lower than one might expect. However, her treating pediatrician, Dr. Roberts, there's a statement in the record where he speaks about the fact that he is confident that she was taking her medication properly. That there were other reasons given her adolescence, hormone fluctuations in adolescence that would speak to why you wouldn't necessarily see that. Was the not going to school and staying home, was that related more towards getting the medication correct, or was it because of the seizures? I think it was a concern about her safety. She had already been on medication since October. The home instruction did not begin until December 1, but she missed most of November because she was having repeated seizures, sometimes two or three times a day. She was in several hospitals in November, and I think she just could not be safely maintained out in public. So she required being home, and it wasn't until March of 04 that the doctors felt that she could go back. But even then, she went back to school and was shadowed by a nurse's aide, couldn't use steps, was limited in her activities, and had to go to the nurse frequently. So it wasn't all better in March, it was just somewhat better. According to the grandmother's testimony, she went from two to three seizures a week to two to three a month at some point around March of 2004. The other great concern I have, which Rana raised, is in the subjective evidence. As the medical expert in this case stated, it's impossible for us to have medical documentation of each and every seizure. That would require this now and young adult, but child to literally... She's 22 now. I believe 21, but this would require her to basically live in a hospital, if we require medical documentation of each and every seizure. We have quite a lot of it here, but to not allow any of the subjective evidence, and by the subjective evidence I mean the statements from her aunt and uncle, the evidence from the school about the accommodations she received, and certainly the testimony from ST and her grandmother. You've argued, Counsel, that this is a Burnett situation, is that correct? I believe that the situation around the functional equivalence is clearly a Burnett. And assuming it's a Burnett situation, are you suggesting that the case should be sent back in order to let more evidence into the record to take testimony? I think that there's enough evidence here that this Court could do a straight reversal and remand for payment. However, I do think that if that's not something the Court feels comfortable, then clearly there needs to be a remand that instructs the Commissioner to begin the analysis at the proper date and to take additional testimony, allow additional evidence, and to properly consider the subjective evidence. What would that be, if you reopen the record and you take additional evidence and testimony? What in particular, and I think Judge Ambrose asked this question, but what are you looking for? Well, I think certainly the subjective evidence needs to be properly considered. In addition, I think that interrogatories to her treating specialists to get more information, the ALJ in the amended decision, which I know we're not considering, but just as an example of why that remand was so wrong, make certain assumptions about what her treating doctor in October 2005, so two years later, is still saying that the seizure disorder is not yet in control. Who has the responsibility of presenting that evidence? Well, I think that if the administrative law judge is not going to accept the opinions of her treating specialist, then the Commissioner does. They need to be able to explain why they're not accepting those opinions. I mean, here to say that they're relying on a consultative examiner who examined this child in February 2004, when she was too sick and her seizure disorder too out of control to even be in school at all, she was on bed rest then at home, and to say that this is not a serious seizure disorder just flies in the face of the evidence from the treating pediatrician who put her on bed rest and the treating specialist. So you would not be presenting any additional evidence yourself? I would be presenting additional evidence from the specialist. And what would that be? I would be getting additional records from the treating specialist, and I would specifically pose some interrogatory questions to her. My understanding, the appellant has applied again, and there is a hearing pending. My sense is if this got remanded, the two would be merged, and there would be quite a bit of additional evidence. The appellant is not, and I know this court can't hear new evidence, but not able to work, and the doctors are saying as such. So I think that the two would be merged. That is pending. So you're saying the condition still exists? Yes. And medication is not able to deal with it? So both. But of great concern to me, too, is the standard that the ALJ applied to the subjective evidence. I really think that flies in the face of this court's reasoning in Besich, Fargnoli, Reifer, and that this case looks very similar to Shada versus the Commissioner, where the court found that the ALJ's analysis was deficient because it merely stated that the subjective complaints were not supported by the medical evidence. That's exactly the wording almost to a T that the ALJ used here to not find the testimony of the appellant and her grandmother credible. She says that it's only credible so long as there is medical documentation. But you will never have complete medical documentation of each and every seizure. That truly would require the claimant to live in a hospital. And as the medical expert himself, Dr. Fetchner, states, it's impossible to have that kind of evidence. You have quite a bit of it here. Just looking at the medical records, the records from the school nurse, there are 19, and if you consider the statements from the young, no, actually not considering that. You have from November 2003 to February 2004, you actually get 19 medically documented seizures. That's a 16-month period, and that's corroborated medically. Adding in the subjective testimony from the grandmother and the appellant, it clearly meets the listing, and it's of great concern. In addition, I was quite concerned. When you talk about medical corroboration, could this consist of a telephone call to the doctor and saying I've got a seizure and having it noted that way? Or does it mean a visit to the doctor or a visit from the doctor to the house?  You know, I think if you're requiring, I mean, people with seizure disorders have seizures, and they're scary, and they lose consciousness at times, and you need to make sure that they can hurt themselves because they'll fall. But they don't necessarily run to the phone or to the ER or to the doctor every time because their life is riddled with these seizures and the aftermath of them. Here, ST had headaches, didn't feel well after. But you're never going to have that kind of complete documentation because, you know, unlike a heart attack or something where you clearly are going to run to the ER, you don't necessarily go running to the ER for every seizure. So there isn't that kind of documentation. There's quite a bit of it here, and that coupled with the statements from the relatives and the testimony from the grandmother and the claimant gets you clearly to meet that listing. In addition, I don't think that that commissioner, the ALJ, gave proper credence to the treating physicians. The only way she looks at them is, again, to that seizure count. But here you had her treating specialist, two years after the fact, saying that this condition was still severe and that this condition was not yet in control. That is never even mentioned in the decision. Very troubling to me. And in addition was the concern that she never even considered the nocturnal seizures. I do believe ST had difficulty at school. First of all, she missed three full months, was put on that per her doctor's orders, but she was a student that was doing well on the honor roll and then started getting C's and D's, in part because she was in the nurse's office a lot of the school day. When she would start feeling a seizure coming on, she would go to the nurse. Her grades plummeted. She had to do summer school. So to say that she wasn't, I don't think the record supports the statement that she wasn't impacted at school. Anything else you want to tell us? No, I don't believe it's helpful. The case was very well argued by both sides. I take the matter under advisement. Thank you. Thank you.